# United States District Court

__SOUTHERN__ DISTRICT OF __FLORIDA__

UNITED STATES OF AMERICA

V.

VINCENT JAEN MORGAN

**CRIMINAL COMPLAINT**

CASE NUMBER: 00-4036-BSS

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning on or about __February 21, 2000__ in __Broward County__, in the __Southern__ District of __Florida__ and elsewhere, the defendant, did (Track Statutory Language of Offense)

knowingly and intentionally attempt to possess with intent to distribute a Schedule II controlled substance, that is, a mixture and substance containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

in violation of Title __21__ United States Code, Sections __846 and 2__.

I further state that I am a __Special Agent, USCS__ and that this complaint is based on the following
Official Title
facts:

Please see attached affidavit.

Continued on the attached and made a part hereof: [x] Yes [ ] No

Signature of Complainant
Joel Mahabir
Special Agent
United States Customs Service

Sworn to before me, and subscribed in my presence,
the Court finds probable cause.

February 22, 2000
Date

at Fort Lauderdale, Florida
City and State

BARRY S. SELTZER, UNITED STATES MAGISTRATE JUDGE
Name and Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT

I, Senior Special Agent Joel Mahabir, United States Department of the Treasury, United States Customs Service, being duly sworn deposes and says: I am a Senior Special Agent with the United States Customs Service (hereafter "USCS") and have been so employed for approximately (21) years. Prior to this, I served five years in the U.S. Marine Corps as a Military Police Officer. The facts contained in this affidavit are of my own personal knowledge, observations and facts related to me by agents of the United States Customs Service, Drug Enforcement Administration, and civilian personal involved in this investigation. Moreover, the facts set forth herein do not constitute all the facts involved in this matter, only those are necessary to support a finding of probable cause.

1. On January 17, 2000, a U.S. Customs Service confidential source (herein after referred as CS), advised Special Agents of the Office of the Resident Agent in Charge, Ft. Lauderdale, that Wilmer STANLEY, a Honduran national residing in the Ft. Lauderdale, Florida area, approached him/her that he (STANLEY) wanted to smuggle approximately one hundred kilograms of cocaine from Roatan, Honduras to Port Everglades, Florida. The CS is currently employed as a crew member onboard the M/V Hybur Trader which operates bi-weekly from Roatan, Honduras to Port Everglades, Florida.

2. The CS advised Special Agents that STANLEY was an illegal alien in the United States and that he was a major importer and distributor or narcotics. STANLEY provided the CS with telephone number (954) 522-6623 and (305) 401-2606 as a means to contact him in the Ft. Lauderdale area.

3. On January 31, 2000, the CS advised Special Agents that he met with STANLEY and another individual identified only as "VINCENT LNU" at the Publix Super Market located

at 1395 S.E. 17th Street, Ft. Lauderdale, Florida. The purpose of this meeting was to coordinate the final arrangements with the CS to smuggle the first twenty kilograms of cocaine. STANLEY advised that his uncle, name unknown, who is currently residing on the mainland in Honduras, would deliver the twenty kilograms of cocaine to the CS in Roatan, Honduras. STANLEY advised the CS at that time that he would pay him approximately $1,500 per kilogram as transportation fees.

4. During the same meeting, STANLEY advised the CS that VINCENT worked with him and provided a contact telephone number of (305) 318-5943 as a means of contacting him. The CS advised both STANLEY and VINCENT that he/she would be traveling to Roatan, Honduras on February 18, 2000 and that he would be able to pick up the twenty kilograms of cocaine at that time.

5. On February 18, 2000, Special Agents of the Drug Enforcement Administration, met with the CS upon his arrival in Roatan, Honduras. The CS advised that he/she was to meet with STANLEY's uncle at 12:00 noon on that day at a gas station to discuss delivery of the twenty kilograms of cocaine. The CS would identify the uncle by him wearing a hat. At approximately 12:15 p.m. on the same day, the CS met with STANLEY's uncle and was given three kilogram size packages of cocaine. This transaction was video and audio taped by Honduran Police Officers. In addition, the Honduran Police retained one of the packages for prosecution in that country.

6. On February 20, 2000, Special Agents of the Drug Enforcement Administration, traveled to Miami, Florida with the remaining two kilogram size cocaine packages for a controlled delivery to STANLEY and VINCENT. On February 21, 2000, the CS arrived at Port

Everglades, Florida on board the M/V Hybur Trader. At approximately 3:45 p.m. on the same day, the CS placed a consensual monitored telephone call to STANLEY at (954) 522-6623 to advise that he/she had arrived at Port Everglades, Florida. STANLEY did not answer his telephone and a message was left on his answering machine.

7. At approximately 3:55 p.m. on the same day, the CS placed a consensual monitored telephone call to VINCENT at (305) 318-5943 to have him meet with the CS at Port Everglades for the purpose of delivering the two kilogram size packages of cocaine. VINCENT advised the CS that he will meet with him/her within thirty-five minutes at Port Everglades adjacent to where the M/V Hybur Trader was docked. At approximately 5:40 p.m., a second call was placed to VINCENT to ascertain why he was delayed and to establish a new time to pick up the cocaine. VINCENT stated that he was on his way and that he will be meeting him/her within twenty minutes.

8. At approximately 5:55 p.m. on the same day, SSA Joel Mahabir acting in an undercover capacity, accompanied the CS to the meet location within Port Everglades for the purpose of delivering three kilogram size packages containing "sham cocaine". At approximately 6:02 p.m., the CS met with VINCENT in a 1999 Toyota SUV bearing Florida vehicle registration (J44-37A). The CS advised VINCENT that he was disappointed with the amount of cocaine which was delivered to him in Roatan, Honduras and that the arrangements was to pick up twenty kilograms. The CS further advised VINCENT that he needed money for his transportation services and that the cocaine was hidden on the ship. At that time, VINCENT payed the CS $50.00 in U.S. currency. The CS then met with SSA Joel Mahabir and proceeded to where the M/V Hybur Trader was docked to retrieve the sham cocaine. This meeting was

video and audio taped.

9.   At approximately 6:10 p.m. on the same day, the CS returned to where VINCENT was parked, and delivered three kilogram size packages containing sham cocaine. VINCENT accepted the packages and a short time later departed the area. At approximately 6:15 p.m. on the same day, VINCENT was stopped by Special Agents of the U.S. Customs Service, Drug Enforcement Administration, and the Broward Sheriff Office, and was placed under arrest.

10.   SSA Joel Mahabir advised the subject identified as Vincent Jaen MORGAN, DOB: 12-23-68, POB: Panama, with an address of 1205 NW 125th Street, Miami, Florida. MORGAN was advised of his legal rights in English which he understood and signed. MORGAN waived his *Miranda* rights and stated that he was willing to cooperate with investigating officials.

11.   MORGAN stated that he has known STANLEY for quite a while and that approximately three weeks ago, he was asked by STANLEY to pick up the cocaine at Port Everglades, Florida. MORGAN further stated that he met with STANLEY on February 19, 2000 at a bar to discuss final arrangements for picking up the narcotics on February 21, 2000.

12.   MORGAN stated that this was the second time he facilitated STANLEY with moving, picking up, and delivering narcotics in South Florida. On the first occasion, he was hired to drive a truck with another individual named "BANDIT" from Miami, Florida to a location in the Northeast United States. He did not remember the exact location since "BANDIT" was more familiar with that route.

13. Based upon the foregoing there exists probable cause to believe that MORGAN knowingly and willfully attempt to possess with intent to distribute a schedule II controlled substance, that is cocaine, in violation of Title 21 U.S.C. Section 841 and 846.

FURTHER AFFIANT SAYETH NAUGHT

*[signature]*

JOEL MAHABIR, SENIOR SPECIAL AGENT
UNITED STATES CUSTOMS SERVICE

Sworn and subscribed to
before me this __ day of
February 2000

*[signature]*

BARRY S. SELTZER
UNITED STATES MAGISTRATE JUDGE

- 5 -